# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>WILLIAM ALEXANDER POPE,<br><br>　　　　　　　　Defendant　. | Case No.: 1:21-cr-00128-RC |

## STATUS UPDATE ON EFFORTS MADE TO OBTAIN LOCAL DISCOVERY ACCESS

I, William Pope, a Pro Se officer of this honorable court, am respectfully submitting this update on my efforts to explore options for local access to discovery. During our last status hearing on December 2, 2022, Judge Contreras decided against immediately ruling on my motion seeking full and direct access to discovery, and instead instructed the government and myself to discuss and explore local options for discovery access in my hometown of Topeka, Kansas.

Despite exploring several options, including access through the Federal Public Defender's office, access through a local CJA, and access through the local law school, it was found that no options were available in Topeka. The only Kansas CJA who expressed openness to providing access is located approximately 30 miles from where I live, which would require more than an hour of round trip drive time on average, and cost me approximately $40 in travel expenses for each trip. That CJA would also only be available for a limited number of hours each week that would be insufficient for the voluminous amount of discovery in this case.

The committee has noted of Pro Se defendants in the <u>Federal Rules of Evidence (16.1)</u> that <u>"courts must ensure such defendants have full access to discovery."</u> I was arrested two years ago this month and am still being denied that due process access to discovery.

Currently, I have full access to less than 1% of the discovery in my case. I filed my motion to modify the protective order and compel full access to discovery because that full access is my constitutional right and is essential to preparing my defense. This is not a 'trailblazing' motion. As noted in Faretta v. California, 422 U.S. 817 (1975) there is a long history of Pro Se rights that predate our Constitution, and which continue to be recognized by our nation and states. "'[T]he mere fact that a path is a beaten one,' Mr. Justice Jackson once observed, 'is a persuasive reason for following it.'"

We can compare the "well beaten path" of Pro Se rights, to the Wilderness Road that Daniel Boone blazed through the Cumberland Gap in 1775, prior to the Declaration of Independence being signed. Like all established roads and trails, our Constitutional rights need preserved and maintained lest they erode. It was the forces of erosion that brought my trail crew and I to the Cumberland Gap in 2011 to restore the Wilderness Road trail, it was the forces of erosion that brought me to the Grand Canyon Trail Crew to maintain the Kaibab and Bright Angel trails, and it is the forces of erosion that compel me to maintain the "well beaten path" of our Constitutional Pro Se rights by seeking full access to discovery.

My motion to modify the protective order and compel access to discovery does not ask this court to blaze a trail for Pro Se rights, but to restore the "well beaten path" of Pro Se rights that has been eroded by the government's far more recent push to destroy this individual right under the guise of protective orders, which they claim are needed to guard against vague 'threats to national security.'

As the government's attorney has noted, I was "entirely peaceful" on January 6, which is an acknowledgement that I am not guilty of these charges and certainly no threat to national security. And I have the right to use the FULL discovery to prove that in court.

**Efforts Made to Obtain Local Discovery Access**

On December 2, the day of our last status hearing, I emailed the government's attorney, Mr. Crawford, asking that he "please send clearer details of any government proposed options for discovery access."

On December 5, Mr. Crawford responded to my email, noting that he was in trial for the entire week, but that he would first like to hear back on the result of Judge Contreras' conversations with A.J. Kramer, the Federal Public Defender for the District of Columbia.

On December 6, I replied to Mr. Crawford that I would touch base with him again the following week after his trial concluded to see if there had been any updates.

On Tuesday, December 13, I again emailed Mr. Crawford asking if he had been able to speak with Mr. Kramer, or if he could send me Mr. Kramer's contact information.

On December 15, Mr. Crawford responded, providing contact information for Mr. Kramer, but advising it would be best to first contact Shelli Peterson, who works in Mr. Kramer's officer, and to provide her with the context of Judge Contreras' meeting with Mr. Kramer about local access. In that email, Mr. Crawford also stated his belief that the public defender officer in Topeka was likely to be too busy to provide access, and that we may have to pursue access through a local appointed standby counsel instead. Mr. Crawford added, "that would require you/Ms. Cubbage to petition the Court for funding and it probably makes sense to first have the conversation with FPD."

I responded to Jason that same morning, thanking him for his suggestions, and noting that I would reach out to Shelli Peterson as a first step.

That same day (December 15), I contacted Shelli Peterson with the DC Federal Public Defender office inquiring whether any options for discovery access had emerged from Judge Contreras' meeting with Mr. Kramer.

Mr. Kramer emailed me a response on December 16, noting that he had spoken with Judge Contreras, and that he had not been able to arrange supervised discovery review in Kansas. I replied to Mr. Kramer that same day asking whether he was "certain that all options for reviewing discovery here in Kansas have been exhausted?" Mr. Kramer affirmed that "I have not been able to arrange for you to review the materials in Kansas."

Since Mr. Kramer's email came late on a Friday, I updated Mr. Crawford the following Monday (December 19) that Mr. Kramer had been unable to arrange access in Kansas. In the same email, I also raised concerns and questions about having access only through an appointed counsel:

> *If I bring the possibility of a local standby counsel to Judge Contreras, I want to make sure I don't get stuck with someone like my first appointed attorney (Mr. Eaton) who ignored my calls and emails until right before each status hearing, or like my second appointed attorney (Mr. English) who was unable to use a computer. Is it possible to submit to Judge Contreras a request for a standby who is available a sufficient number of hours each week, who has technical proficiency with computers, who has computer systems capable of working with video, etc?*

Since Judge Contreras had suggested the possibility of discovery access through the local law school, I also asked Mr. Crawford whether the government objected to that option:

*Judge Contreras also raised the question of whether assistance might be available through the Washburn University Law School. That was not listed as a recommendation in your last email. Is that even something the government is open to? I imagine folks in the program are on winter break right now, but I can investigate further if Washburn is an option.*

Mr. Crawford responded two days later on December 21. In that email, he noted that his detail on my case was almost over, and he introduced and cc'd the new AUSA, Ms. Moran. Mr. Crawford said the government was open to access through a Law School as long as there would be an attorney supervising. He also stated that he was unsure about the process for appointing standby counsel in Kansas, and he included a list of contact information for current CJA in Kansas. Mr. Crawford added, "it may make sense for you to try and find someone on the CJA panel who has offices near you so that you could go to their office to view the discovery."

Since my appointed standby counsel Mrs. Cubbage was taking off several days for Christmas, I informed Mr. Crawford that I would discuss those proposed options with Mrs. Cubbage after the holidays. I also wished Mr. Crawford and Ms. Moran a Merry Christmas.

After her days off for Christmas, I spoke with Mrs. Cubbage by phone and concluded it would be best to inquire with Washburn University before reaching out to CJA attorneys individually.

On January 3, 2023, I emailed Tammy King, who was listed as the contact for the Washburn University Law School pro bono program. I gave her a broad overview of the

situation, the breadth of the discovery, the restrictions of the current protective order, and my need for access. I also mentioned that Judge Contreras had asked that I inquire about the possibility of gaining access through the local law school. Later that day, Mrs. King responded:

> *Our pro bono program pairs students with attorneys who are already working on pro bono matters for clients or with organizations that serve unmet legal needs. Unfortunately, we cannot take cases directly from the public. I checked with the professors in the Washburn Law Clinic to see if this type of representation is something that they can take on, but unfortunately it exceeds the scope of their teaching program. They limit their representation to criminal defendants facing charges in either the Shawnee County District Court or the Topeka Municipal Court.*

I thanked Tammy for her response, and the next day (January 4) began inquiring with attorneys from the CJA list that Mr. Crawford had sent me. I again explained the situation with the protective order and how Judge Contreras had asked me to explore options for local access. However, I was receiving uninterested responses, so I again spoke with Mrs. Cubbage by phone to discuss whether there was a better option. Mrs. Cubbage recommended that I contact the Kansas FPD officer directly, rather than contacting members of the CJA panel individually, since she believed their typical method was to contact all CJA attorneys at once.

On January 5, I emailed Kansas Public Defender Melody Brannon, and as with my emails to Washburn and individual CJAs, I explained the situation and my need for discovery access. That same day, I received a response from Laura Shaneyfelt of the Kansas FPD office that, "the Federal Defender Office will not be able to represent you as standby counsel, but I will contact your attorney about the possibility and logistics of getting CJA panel counsel appointed by the DC court." I politely explained to Mrs. Shaneyfelt that I did not have an attorney and was

representing myself, however, Mrs. Brannon jumped back into the email chain and asserted that her office would not communicate with me directly, insisting they would only discuss CJA logistics with a standby counsel even though I am the one managing my case. Despite the Kansas FPD's contempt for Sixth Amendment rights, I felt it best to pursue all possibilities for local access as directed by Judge Contreras, and I asked Mrs. Cubbage to speak with the Kansas FPD.

> To: Melody Brannon; Laura Shaneyfelt Cc: Nicole Cubbage
>
> Melody,
>
> I was asked by the honorable Judge Contreras to investigate local options for Discovery access. By contacting you I am following his directive, just as I have with the others I've contacted.
>
> All my emails to you have been respectful. I have merely clarified that I am the one managing my case. The other contacts I've made in Topeka have gone smoothly, so I did not anticipate the FPD would be uncomfortable working directly with defendants who choose to exercise their Sixth Amendment rights.
>
> I understand that your office has reached out to Mrs. Cubbage about doing a phone call at 3 p.m. EST. Please provide her with all relevant information so that she can pass that information on to me, so that I can make decisions and pursue next steps.
>
> I will be giving Judge Contreras an update at my next status hearing on February 3.
>
> Best wishes in your service to defendants,
>
> Will

Mrs. Cubbage spoke with the Kansas FPD office by phone later in the afternoon of January 5, and they agreed to contact their list of CJA attorneys, inquiring about their availability to provide me discovery access.

Kansas FPD notified Mrs. Cubbage on January 6, that they had received one response from an attorney located in Lawrence, Kansas. Since that attorney would only be able to provide very limited access each week, and since the attorney was not located in Topeka, I decided to wait a few days to see if any other interested CJAs responded.

Mrs. Cubbage was in trial the following week, but I followed up with her on January 12, asking if any CJA attorneys in Topeka had responded to the Kansas FPD. None had. I again followed up with Mrs. Cubbage on Monday, January 16, asking whether the Kansas FPD would be open to sending a follow-up email that went only to Topeka attorneys.

> Could you follow up with Kansas FPD again to see if they've been able to find anyone in Topeka?
>
> The new government attorney hasn't reached out yet or responded to any of my emails, but after we get a clearer picture of the situation with FPD I'll try to reach out to her again. I had expected the government to be more involved in trying to find a local solution for my discovery access.
>
> Will

On January 17, Kansas FPD informed Mrs. Cubbage that they would send a follow-up email to CJA attorneys in Topeka.

When we did not get a response in the next two days, I decided to proceed with contacting the CJA attorney in Lawrence, KS.

On January 19, I emailed Kevin Babbit, the only Kansas CJA who had been open to facilitating discovery access. Mr. Babbit responded later that day, and we arranged a call the following day, January 20.

> To: kbabbit@faganemert.com   Cc: Nicole Cubbage
>
> Hi Kevin,
>
> I am a January 6 defendant representing myself. Judge Contreras of the DC District asked me to investigate local options for accessing some of my discovery locally since the government is opposing my motion to gain full access through their discovery systems. I contacted the KS FPD office, and they said that you might be interested in facilitating local access.
>
> Essentially, I need to be able to search and access discovery directly and to make work product to prepare my defense, but the current protective order prevents me from directly possessing some files that have been designated as 'highly sensitive' without an attorney present. Judge Contreras has also implied he would be open to a paralegal assisting with this. Of course, I will first need to present options to Judge Contreras at my next status hearing on February 3.
>
> Before I can present options to the judge, I need to gather more information of what potential arrangements might look like.
>
> Essentially, I need to know how many hours per week I would be able to access discovery, how many days per week I would have access, which days of the week I would have access, and how any downloaded 'highly sensitive' files would be stored securely.
>
> If you would like, I'd be happy to discuss in more detail on a conference call with my standby counsel, Mrs. Cubbage, who I've copied into this email. She has some availability tomorrow afternoon and all day Monday.
>
> Will Pope

On January 20, I spoke by phone with Mr. Babbit, explained the need for discovery access, and noted that we had not yet received approval from Judge Contreras for a CJA in Kansas, but that we were seeking to gather more information to provide an update on access options for my February 3 status conference.

Mr. Babbit provided a description of his offices, and what discovery access might look like:

- In average driving conditions, Mr. Babbit's offices are around 35 minutes from where I live in Topeka.
- The work area Mr. Babbit has available is his office conference room. This room does not have a computer workstation. The conference room would need to be reserved at least a week in advance. There are not set days it would be available, and it would only be available for discovery access for four hours per week.

- Mr. Babbit does not want to use his office computers or network to provide discovery access. They do, however, have WiFi that he believes would be adequate for access. Mr. Babbit believes it makes the most sense that a "completely blank, new computer that is not connected to our office network" be used for discovery access. He noted that, "provided we could be reimbursed for the expense, we can easily obtain one for your use." Mr. Babbit estimates that a laptop capable of working with large video files could be purchased for $1000 to $1500 dollars.
- In April, Mr. Babbit's law practice is moving to a new office location, which will have a second conference room. After April it may be possible to occasionally have more hours of access if staff are available.
- Mr. Babbit says that his availability to facilitate discovery access is dependent on whether support staff will be allowed to provide oversight for discovery access. He estimates that most weeks he will only be able to spare a paralegal for four hours on average. Occasionally, Mr. Babbit may also be available to provide oversight for up to an additional four hours. However, if he or a paralegal are not required to be in the conference room at all times, they believe they will be able to accommodate up to eight hours of access per week (and occasionally more) after the April move.
- Mr. Babbit seeks to be reimbursed for his time at the standard CJA rate.

**Issues With Distant Access**

Traveling to Lawrence for discovery access would cost me time and money. Unlike commuters in D.C. who have no added expenses when using their monthly metro pass for an additional trip, the most affordable way to get to Lawrence is by driving, and I would have to drive my own vehicle.

The Federal government's mileage rate for 2023 (which calculates the combined travel costs of fuel and maintenance) is $0.655 per mile. This means it would cost me around $40 each time I accessed discovery in Lawrence. Additionally, I would lose valuable time while driving. Unlike metro commuters in DC who can work on a laptop as they are taken to their stop, I would not be able to use trip time to Lawrence for work. I would have to focus that time on driving.

I used Google Maps estimated route time ranges to compile the following estimated costs (which do not include the value of my time lost to driving):

1. Highway 24: 60.2 miles and 70-90 minutes round trip. $39.43 round trip expense.
2. Kansas Turnpike: 57.6 miles and 56-80 minutes round trip. $40.73 trip expense (w/tolls)
3. Highway 40: 55.6 miles and 80-100 minutes round trip. $36.41 trip expense

Much like Jim Crow era poll taxes, traveling to access discovery in Lawrence would equate to an unjust and burdensome tax on my time and money to obtain a constitutional right.

If any January 6 attorney were required to waste more than an hour each time they logged into the discovery system, they would be outraged and let this court know their feelings in very vivid language. Attorneys would also call it a severe constitutional issue if they were charged $40 every time they accessed discovery on behalf of a client.

But in addition to costing me time and money, this limited access would not be sufficient for sifting through the voluminous discovery in my case. The government's Discovery Volume #24 letter notes they have now produced nearly 5 million files, and in a recent [press release](#) the FBI estimates that it will take 361 days to view all video that has been produced when viewing for 24 hours per day. Limiting me to only four to eight hours of access per week amounts to only

token discovery access. I need FULL access in order to figure out what is relevant and needed for my defense.

The four to eight hours per week would also not be entirely devoted to sifting through the evidence. Since the current protective order prohibits me from possessing files that have been classified as 'highly sensitive,' I would only be able to create highly sensitive work products during the limited time I would have access in those law offices. If the time ran out while I was in the middle of a project, I would have to drop that train of thought and wait a week before I could pick it back up. This would lead to very disjointed defense preparations.

If I had full access to discovery, I would work many hours a day every day to review it. However, if I am unable to access important files and work products from home, it will greatly increase the length of time required to prepare my defense.

Traveling to access discovery also concerns me because my only vehicle is more than twenty years old, and I am already battling several mechanical problems. Because of this, I limit driving and rarely travel as far as Lawrence outside of Topeka. Driving hundreds of additional miles per month to access discovery could accelerate the demise of my car and result in a total loss of transportation.

**Sharing Concerns with the Government**

On the Monday following my Friday afternoon call with Mr. Babbit (January 23), I reported to Ms. Moran that the only Kansas CJA who had been open to facilitating discovery access was thirty-five minutes away and could provide only limited access each week. I asked Mr. Moran, "Has the government made any contacts in Topeka to come up with other options for local discovery access?"

On January 31, Ms. Moran responded suggesting that I reach out to CJA attorneys in the Kansas City area, visit Mrs. Cubbage in Texas, or seek the court to reimburse the cost of Mrs. Cubbage traveling to Kansas. [Ms. Moran did not suggest reimbursing my expenses if I were to travel to Kansas City or Texas].

Kansas City and Texas are farther away from me from Lawrence, and would be more expensive drives. If I were to travel to Texas, or if Mrs. Cubbage were to travel to Kansas, the access would still be only for a short and limited duration (in addition to being far more burdensome). This equates to only token access that is insufficient to sift through the voluminous discovery and prepare a defense.

Furthermore, if I had access to this discovery that is being hidden from me, I would spend several hours each day reviewing it and making work product. Having only an inconvenient and intermittent access is not sufficient to prepare my own defense in my own way.

**The Clear Remedy**

As I promised Judge Contreras, I have made a diligent, good faith effort to explore all options for discovery access in Topeka. Despite being thorough, no local options were found.

The government's attorney, Mr. Crawford, acknowledged that I was entirely peaceful on January 6, and there is no reason for me to sacrifice my constitutional right to discovery to accommodate the government's desire to keep discovery hidden from me. Like vampires allergic to light, the DOJ seems allergic to providing defendants access to discovery, but the government's allergic reactions to transparency and justice do not eliminate my rights.

Furthermore, representatives of the government have sworn an oath to the constitution, which includes the constitutional right of Pro Se defendants to have full access to discovery. This

right to full access should not be opposed or violated by those who have sworn an oath to uphold it, since Pro Se discovery access is a crucial element of the United States Constitution.

Since the government prioritizes preventing Pro Se January 6 defendants from having full access to discovery over honoring and defending that same constitutional right they have sworn to protect, a balance must be found.

The clear remedy is for the government to drop these charges against me in order to accomplish their objective of preventing me from having full access to discovery.

An alternative remedy is for this court to grant my motion to modify the protective order and compel the government to provide full access to discovery.

Respectfully Submitted this 2nd day of February, in the year of our Lord, 2023

By: William Pope

/s/

William Pope

Pro Se Officer of the Court

Certificate of Service

I certify that a copy of the forgoing was filed electronically for all parties of record on this 2nd day of February, 2023.

/s/
William Alexander Pope, Pro Se