UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 21-cr-128 (RC) |
| | : | |
| MICHAEL POPE, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL FILINGS AND TRIAL BRIEFS**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this response to the Defendant, Michael Pope's Motion for Judgment of Acquittal and five supplements (ECF Nos. 248, 258, 331, 332 and 341) in compliance with the Court's July 10, 2024 Minute Order. Regarding Count One, 18 U.S.C. §231(a)(3), the evidence offered in trial was sufficient as a matter of law to sustain the conviction of Michael Pope and the subsequent filings fail to offer any argument to the contrary. Regarding Count Two, pursuant to Federal Rule of Criminal Procedure 48(a), the Government moves to dismiss Count Two, Obstruction of an Official Proceeding in violation of 18 U.S.C. § 1512(c)(2), of the Second Superseding Indictment (ECF No. 156).

**FACTUAL BACKGROUND**

**I.      The Defendants' Actions on January 6, 2021**

After the 2020 Presidential election, Michael Pope and his brother William Pope used Facebook Messenger to plan a trip to D.C. to attend then-President Trump's Stop the Steal Rally, and to protest Congress's certification of the Electoral College vote count. Commenting on a Facebook post on December 26, 2020, Michael Pope posted, "Anyone want to vaca in DC in January?" Gov. Ex. 200P The Pope brothers anticipated that the event may involve violence. As

early as November 5th, 2020, Michael Pope messaged his brother saying, "Trump needs to pick up a pistol and finish this." Gov. Ex. 200K. In addition to planning their travel itinerary, the Popes discussed what weapons and protective vests they would bring to Washington, D.C. William Pope told his brother that, "This whole thing is the perfect target for bad actors" and Michael Pope responded, "Part of me want to bring a checked bag with more gear, but I really don't want to answer questions about why I'm flying with body armor ect." Gov. Ex. 200A. They discussed various kinds of body armor and debated what kind of handgun William's new Kevlar vest would block. Gov. Ex. 200I. On December 28, 2020, while discussing a Reddit post, Michael Pope messaged his brother, writing, "I wonder if we should set up a cache in a locker just in case." William Pope commented that it would be better just to bring backpacks. Def. Ex. 9. Both Pope brothers eventually did wear backpacks into the Capitol. The Popes also discussed attending President Trump's rally in Atlanta but decided to skip it in favor of meeting closer to D.C.; they also planned to drive down the East Coast to Charleston, South Carolina, after the January 6 rally.

The Popes arrived at the Mall at approximately 7:00 a.m. on January 6. Both Pope brothers carried a flagpole bearing an American flag. Michael Pope wore a black jacket, a black stocking hat, and a green or tan backpack. The Popes decided not to go into President's Park, where law enforcement officers were conducting security screening, because the flagpoles they were carrying would not be allowed. Instead, they listened to former President Trump's speech from near the Washington Monument. Photographs found during a search of William Pope's phone captured the brothers' vantage point as they watched the rally. *See* Gov. Exs. 202A-202C. In his speech, President Trump discussed the certification of the electoral college vote occurring in Congress that day, ensuring that the audience, including the Popes, were aware of the upcoming proceedings.

The Popes then walked more than a mile from the Washington Monument to the U.S. Capitol. During part of this walk, William Pope streamed a Facebook Live video, showing his face and showing Michael Pope walking alongside him. In the video, William Pope said he is "here today with [his] brother Michael." Gov. Ex. 103. At the time he made this statement, William turned the camera toward Michael Pope, who was walking beside William Pope and who acknowledged William Pope with a wave. William Pope explains that they were marching to the Capitol, where Vice President Mike Pence was located. and said, "Mike Pence, I guess he is down there right now, deciding whether they are certifying the election or not." *Id.* William Pope further added that "[w]e got a lot of people who are not happy that the election is potentially being stolen. And, ah, they are here to stand up for our country." *Id.* These statements were made within earshot of Michael Pope.

At about 1:53 p.m., Michael Pope is seen on open-source video at the vanguard of the crowd at the East Front of the Capitol. Capitol Police Officer Pernell Clark testified that he was posted at this location to keep rioters, including Michael Pope, from breaking through the police line and entering the Capitol's restricted perimeter. Video evidence clearly shows Michael Pope helped others drag bike racks out of place. Gov. Ex. 121. When Capitol Police Officer Pernell Clark came over and brandished his baton to stop the crowd and keep the bike racks in place, Michael Pope kicked at the bike rack, before eventually grabbing the bike rack and pulling it down, stepping over the bike rack, and moving past the police line. Gov. Exs. 114A & 114B. As he surged forward at the front of the crowd walking towards the Capitol building, Michael Pope waved his arm to beckon the crowd to follow him as he marched towards the Capitol building. Gov. Ex. 122.

The Popes entered the Capitol through the Senate Carriage Doors, at 2:18 p.m. CCTV captured their entrance into the building. Gov. Ex. 102. Just prior to their entry, police were

ushering rioters out of the Senate Carriage Doors. At that time, the Senate Carriage Doors were open, and police were attempting to use the door to funnel rioters out of the building. A crowd began to grow just outside the doors, putting additional pressure on the officers as they tried to usher rioters out without letting other rioters into the building. William Pope was near the front of this crowd. He used his body to push his way into the building, maneuvering past a police officer who was attempting to block the entryway. Michael Pope also entered the Capitol, immediately behind William Pope. A scuffle broke out between police and rioters, just as William repositioned himself in the doorway. An officer reached past William to deploy pepper spray at the crowd. William Pope did not move and stood where he was with the flagpole he was carrying wedged into the door jamb preventing officers from being able to close the door. Officers closed the other door; however, officers were unable to close the door which William Pope was standing in front of with his flagpole wedge in the door jamb.

While William Pope was positioned at the door and keeping it open, Michael Pope had slipped inside the Capitol. Initially Michael Pope stood in the foyer, to the left of William Pope. Eventually, Michael walked from the foyer, past William Pope with the flag in the door, and into the hallway beyond the Senate Carriage Doorway. Gov. Ex. 101. Michael Pope entered a Senate elevator at approximately 2:19 p.m. Officers directed Michael Pope to leave the elevator, but he refused. Three officers were forced to enter the elevator and pull Michael Pope from the elevator, leading to a brief grappling incident between Michael Pope and the Capitol Police officers.

After Michael Pope was removed from the elevator, the Popes penetrated further into the building and came across a hallway guarded by a Capitol police officer named Tucker Kleitsch. Here, at about 2:23 p.m., Michael Pope attempted to enter the hallway and was stopped by Officer Kleitsch. Officer Kleitsch moved Michael back out of the hallway, and Michael had a

confrontation with the officer. Michael stayed in the officer's personal space and made a second attempt to get past the officer, again forcing the officer to block Michael from entering the hallway.

The interaction lasted a few seconds, but open-source video evidence shows that Michael Pope turned and spoke to Officer Kleitsch briefly, while William Pope reached out his arm saying, "Mike, Mike, Mike" to restrain his brother. Gov. Ex. 115. At this moment, the police line blocking the hallway perpendicular to Officer Kleitsch broke, and the Pope brothers proceeded to walk with other rioters further into the building.

Open-source and CCTV footage captured the Pope brothers walk in many areas of the Capitol building over the next twenty minutes. The Popes walked through the suite of offices belonging to then-Speaker of the House Nancy Pelosi, the Crypt, and Statuary Hall. Eventually, at about 2:37 p.m., Michael and William Pope exited the Capitol building. Gov. Ex. 104. As the Popes left the building, fire alarms can be heard on open-source videos. At 2:42 p.m., the Popes' mother sent Michael Pope a Facebook message stating that, "[…] the senate/house are on lockdown because trump supporters have stormed inside the capitol building. What are you seeing?" Michael Pope responded, "[t]hat sounds feasible."

Later on January 6, Michael Pope sent his mother the following Facebook message: "It was more peaceful than what the news is making it out to be. I saw a few people hurt including PD, and offered to help. Wasn't anywhere near the shooting, and probably found out after you did." Gov. Ex. 200F.  When his mother suggested that "it was antifa who breached the capitol," Michael Pope responded, "I'm sure antifa was there among the crowd, but it felt more like the people decided that fraudulent elections equated to a lack of representation and took back their capital in the 21st centuries equivalent to the boston tea party." *Id.*

On January 7, William Pope texted Michael Pope, "I think I'm going to wait this all out." Michael Pope responded, "That might be smart. It looks like they charged the first person already. He got assault and unlawful entry after beating a cop inside the capitol. We were peaceful, and I can with with unlawful entry if thats what happens." [sic]

## II. Trial Proceedings

The trial in this case commenced on January 17, 2024, and lasted two days. *See* January 17, 2024, and January 18, 2024 Minute Entries. On January 18th, at the close of the defendant's case, the defendant orally moved for Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29 and made supporting arguments. The government opposed the motion in its own oral argument. *See* January 18, 2024 Minute Entry. The Court elected to reserve ruling on the motion until after the parties' provided further briefing on the subject.

Michael Pope filed his Supplemental Memorandum in support of his Motion for Judgment of Acquittal on March 8, 2024. (ECF No. 221). He subsequently filed a Motion for Judgment of Acquittal and five supplements (ECF Nos. 248, 258, 331, 332 and 341) over the following five months. For the reasons explained herein, the Government submits the Court should render a guilty verdict.

## **ARGUMENT**

**I. The Government Provided Sufficient Evidence to Prove that the Defendant Count One (Civil Disorder), 18 U.S.C § 231(a)(3)**

a. *Elements of the Offense*

Count One charged Michael Pope with committing or attempting to commit an act to obstruct officers during a civil disorder, in violation of 18 U.S.C. § 231(a)(3). To prove that offense, the government was required to prove that (1) "the defendant knowingly committed an act or attempted to commit an act," (2) in so doing, the defendant "intended to obstruct, impede,

or interfere with" law enforcement officers; (3) the law enforcement officers were at that time "engaged in the lawful performance of their official duties incident to and during a civil disorder,"

The government presented sufficient evidence for conviction. Michael Pope, alongside his brother, actively engaged multiple Capitol Police officers to obstruct or interfere with them as they sought to maintain control over hordes of rioters on restricted Capitol grounds and both inside and outside the Capitol building on January 6. Three law enforcement officers (U.S. Capitol Police Captain Sean Patton and U.S. Capitol Police Officers Pernell Clark and Tucker Kleitsch) testified about their specific interactions with Michael Pope and how he resisted their attempts to control the crowd and secure the Capitol building. All witness testimony was corroborated by closed circuit television video and open-source third-party video. For a full summation of the evidence to prove each element, the government incorporates its Response to Michael Pope's Supplemental Memorandum of Law in Support of His Motion for a Judgement of Acquittal Under Rule 29. *See* ECF No. 235

    b. *Michael Pope Clearly Intended to Obstruct Law Enforcement*

Michael Pope argues that the government did not prove that he intended to obstruct, impede, or interfere with law enforcement officers. However, the evidence at trial proved Michael Pope possessed the necessary requisite intent. Michael Pope's repeated confrontations with officers clearly show that he possessed the specific intent to obstruct, impede, or interfere with law enforcement officers.

First, as he admitted in his Statement of Offense (ECF No. 159), Michael Pope entered and remained inside the Capitol building despite knowing that his presence was not authorized. His Facebook messages revealed that he had an expectation of potential violence at the Capitol that day, even considering wearing protective body armor. Second, video evidence showed Michael

kicking police barriers on the East Side of the Capitol, pulling down and walking over police barriers, beckoning the crowd behind him to follow him towards the Capitol building, moving past officers who clearly wanted the crowd to stay back and ignoring officer orders, and physically resisting officers as they attempted to remove him from elevators and Capitol hallways. *See* Government Exhibits 113-114, 120-122. Obstruction of law enforcement is clearly a natural and probable consequence of his behavior within the secured grounds of the Capitol.

Michael Pope clearly understood that officers wanted him to stay outside the Capitol. Michael was kicking barricades as officers attempted to keep them upright. He entered the building despite the presence of law enforcement ordering him to stay back and then resisted the commands of at least two separate officers while inside the Capitol. It defies reason to suggest that Michael Pope did not understand that his behavior would impede law enforcement's ability to do their job. Therefore, by encouraging the crowd to join him as he approached the building and entering despite the verbal and physical attempts of police to stop him, Michael Pope demonstrated the specific intent required under 18 U.S.C. § 231(a)(3).

    c. *The Offensive Use of Physical Force*

Michael Pope argues that Section 231 "requires more than presence at a civil disorder," and in fact requires "violent physical acts." ECF No. 221 at 38. This clearly misstates the legal standard. First, there is no legal requirement that an offensive use of physical force be found to determine a civil disorder violation. 18 U.S.C. § 231(a)(3) criminalizes any act to, "obstruct, impede, or interfere with any… law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects…[the] performance of any federally protected function." The statute defines "civil disorder" as any "public disturbance involving acts

of violence by groups of three or more persons" which "causes an immediate danger of injury to another individual." *See* § 232(3). Michael Pope is attempting to include a statutory element that does not exist.

This District has repeatedly refused to find that an act of violence is necessary under 18 U.S.C. § 231(a)(3). *See United States v. McHugh*, 583 F. Supp. 3d 1, 28-29 n.26 (D.D.C. 2022) (rejecting a "violent physical acts requirement" as "such a reading is neither warranted by the text nor necessary to save the law from unconstitutionality."); *United States v. Mostofsky*, 579 F. Supp. 3d 9, 23 (D.D.C. 2021) ("Non-violent conduct could also be covered, since not all such conduct would be expressive."); *United States v. Nordean*, 579 F. Supp. 3d 28, 58 (D.D.C. 2021) ("there is no basis in the text of the statute for such a limitation [to violent conduct]. The Court concludes that the statute is targeted primarily if not exclusively at conduct, whether violent or not."; *United States v. Phomma*, 561 F. Supp. 3d 1059, 1068 (D. Or. 2021) ("[T]he statute is targeted primarily if not exclusively at conduct, whether violent or not, rather than speech."). Thus, as multiple courts in this district have held, neither the text of the statute, nor broader constitutional concerns, create an implicit requirement that violations of Section 231 be violent, or even that the defendant physically touch an officer.

However, even if they had, the evidence supports such a finding. At trial, the government proved at least four instances of aggressive conduct by the defendant towards law enforcement. They were:

1. Kicking the barricades in front of Officer Clark as he attempted to control the crowd.

2. Moving past Officers, including Captain Sean Patton, who were attempting to block the entrance of the crowd and pushing his way into the Capitol via the Senate Carriage Doors.

3. Entering the elevator next to the Senate Carriage Door and needing to be physically removed by officers.

    4. The altercation with Officer Kleitsch in the hallway.

Michael Pope was not a mere bystander, but someone who was obstructive, impeding, interfering, aggressive and antagonistic towards law enforcement multiple times throughout the day.

Prior January 6th convictions under 18 USC § 231(a)(3) show that the Michael Pope's conduct was of similar, or more serious, gravity as that in other civil disorder cases. There is no reason for this court to deviate from the precedent of other courts in this district in analyzing the 18 USC § 231(a)(3) charge here.

### II. Michael Pope's Filings of Supplemental Authority Contain Factually Distinguishable Cases and Are Not Binding

In his five filings of Supplemental Authority, Michael Pope provides case citations and transcripts from at least five January 6th jury trials. In each case, as evidenced by the verdict transcripts provided by Michael Pope, the ruling turned on the particular facts of the case. This is appropriate, but the factual circumstances that these cases cite to are inapposite.

For instance, Michael Pope cites to United States v. Michael Daniele, 1:23-cr-00143 (APM), a case where a defendant on the West Front accused of 18 USC § 231(a)(3) stepped over police barriers and moved them aside. This bears a minor resemblance to Michael Pope's case; however, in the case before this Court, Michael Pope is much more criminally liable in that Michael kicked the barriers that officers were actively attempting to control before stepping over them, beckoning the crowd forward by waving. Michael's actions were clearly such that they did obstruct, impede, or interfere with the officers. Additionally, as described above, Michael Pope had three additional instances of aggressive conduct towards law enforcement on January 6th.

Similarly, in ECF 332, Michael Pope suggests that the acquittal in *United States v. Hicks*, 23-cr-00399 (JMC) would compel this Court to acquit him on Count One. Again, a look at the

facts of this case find clear delineation between *Hicks* and Michael Pope's fact patterns. In *Hicks*, Judge Cobb found that there was clearly a civil disorder and riot taking place and that that Hicks tried to push his way into the building but acquitted on the 18 USC § 231(a)(3) because she could not find any evidence that Hicks intended to impede law enforcement officers as she pushed. 23-cr-00399 at 7, 12-13. Judge Cobb says "In other words, I don't know that if there had been a visible line of officers at the door, that Mr. Hicks would have behaved the same way or tried to push beyond the officers." *Id.* at 13. In fact, the Court found that when Hicks saw an officer, he pulled back from shoving. *Id.* at 14.

Michael Pope's conduct is unlike Hicks because at all four instances of aggressive conduct did obstruct, impede, or interfere with law enforcement and the officers were directly in front of Michael Pope and in his immediate presence The video evidence presented at trial shows Michael could clearly see and hear the officers trying to stop the progress of the crowd. Michael Pope cannot reasonably argue he lacked the knowledge necessary for the intent of 18 USC § 231(a)(3).

In its Response to Michael Pope's Supplemental Memorandum of Law in Support of His Motion for a Judgement of Acquittal Under Rule 29 the government provided examples of previous 18 USC § 231(a)(3) convictions for behavior that like Michael Pope's. *See* ECF No. 235 at 12-13, fn. 1. In the eight months since trial, there have been numerous 18 USC § 231(a)(3) convictions in bench trials and many of these cases contain fact patterns like the ones in this case.[1]

---

[1] *See* the following examples of recent 18 USC § 231(a)(3) convictions in bench trials since May 2024 :
- Waving for other rioters to follow him into the building on East Side of Capitol and resisting when law enforcement attempted to push him out. *United States v. Antonio Lamotta,* 1:22-cr-00320 (Cobb, J.)
- Pushing police barricades, moving barricades aside, and calling for rioters to storm the Capitol. *United States v. William Dunfee*, 1:23-cr-00036 (R. Walton)

Ultimately, this court must look at the evidence presented at trial and make its own factual conclusions. And the evidence presented leaves no other conclusion than a finding of Guilty as to Count One.

## CONCLUSION

The evidence presented at trial clearly establishes Michael Pope is guilty of Count One, obstructing, impeding, or interfering with law enforcement during a civil disorder in violation of 18 U.S.C. § 231(a)(3). Count Two should be dismissed pursuant to Federal Rule of Criminal procedure 48(a) as the Government makes this motion in the interest of justice and in order to clarify and simplify the issues to be resolved as a result of the trial of the defenmdant.

Respectfully submitted,
MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052

By: /s/ Matthew Beckwith
MATTHEW BECKWITH
DC Bar No: 90014452
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20004
(202) 252-7109
Matthew.Beckwith@usdoj.gov

BENET J. KEARNEY
NY Bar No. 4774048
Assistant United States Attorney On Detail
601 D Street NW
Washington, DC 20530
Benet.Kearney@usdoj.gov
(212) 637 2260

KELLY ELIZABETH MORAN

---

- Interfering with police officers attempting to clear the Capitol and preventing officers from closing the doors to the Crypt. United States v. Jeremy Grosclose, 1:21-CR-0311 (Cooper, C.)

Assistant United States Attorney
NY Bar No. 5776471
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
202-740-4690
kelly.moran@usdoj.gov