# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 1:21-cr-00128-RC |
| v. | |
| WILLIAM ALEXANDER POPE, | |
| Defendant. | |

## REPLY TO THE GOVERNMENT'S RESPONSE TO MY SECOND MOTION FOR DISCOVERY ON THE MAN WHO PUSHED ME INTO THE CAPITOL

On September 6, 2024, I filed a Second Motion to Compel Discovery on the Man who pushed Me into The Capitol: Nicholas Hofer (ECF No. 351). In that motion I presented facts of Hofer's past military service, and of his likely employment at a federal facility in Martin County, IN. I also demonstrated that if Hofer is a federal employee, the government has the ability to seek and discover whether Hofer was working for the government on January 6, and I asked the Court to compel the government to do so. The government respond in ECF No. 359, not by addressing the facts of my motion, or by denying that Hofer works for the federal government, but in ad hominem attacks on my reasoning ability and by claiming that even if Hofer were a federal employee, it would not affect my case (p. 3). This week att our September 23, 2024, status hearing, the government again avoided directly denying that Hofer was employed by the government, and repeated similar ridiculous arguments about Hofer's government employment not being relevant to my case. Clearly, though, if a man working on behalf of the government pushes an individual into the Capitol, then that action to enter was taken by the government employee, not by the defendant. If pushing into the Capitol is done on behalf of a government intent on prosecuting the man being pushed, then the man pushed in has been entrapped.

**Background of the Second Motion for Discovery on the Man who Pushed Me in the Capitol**

On May 13, 2024, I filed a Motion to Compel Discovery on the Man who Pushed Me into the Capitol, ECF No. 272. The Court denied that motion in Order No. 326 at 36, but strongly reminded the government of their obligation to "obtain that information if it is within possession of an agent working on behalf of the Government," and to produce it to me in a reasonable amount of time. In reminding the government of that obligation, the Court also recognized that I believed it possible "that the unidentified individual may be a government operative." The Court has also ruled in Order No. 326 at 8, that, "To the extent that discovery exists showing that Pope himself interacted with an undercover agent who induced him to violate the law, Pope can obtain that in discovery." And in Order No. 239 at 13, the Court found that the denial of my motion would be, "subject to reconsideration if Pope can demonstrate that the discovery he requests depicts his interactions with an individual he believes to be an undercover officer and he can articulate how that individual influenced his conduct."

The Court's past instructions should prompt the government to thoroughly investigate the possibility that Nicholas Hofer, the man who pushed me into the Capitol, was working on behalf of the government, but there is no evidence that the prosecutors in this case have done so, which is why on September 6, 2024, I filed a second motion on this matter, ECF No. 351. That motion goes into great detail on the intervening circumstances. But to summarize, that second motion to compel discovery pointed out that the government did possess information on the man who pushed me into the Capitol even when they told me and the Court that they possessed none. Furthermore, even though the government (after being prompted by the Court) identified the man as Nicholas Hofer, and filed charges against him, the government provided me nothing more than Hofer's name and Statement of Facts. And since then, additional questions have surfaced.

Clearly the government knows where Hofer works, since they have surveilled him at his workplace. If Hofer's work is connected to the federal government, then some government agency possesses information on whether Hofer was working for the government on January 6, so the prosecution in this case has an obligation to find out who he worked for, and whether he was working on behalf of the government on January 6. I am making this second motion because I do not believe the government has thoroughly pursued that information.

As I will detail in this filing, the compartmented nature of the federal government has already prevented the prosecutors in this case from becoming fully aware of information I had sought in previous motions. Since the siloed nature of the prosecution's awareness has the potential to deprive me of exculpatory information on the man who pushed me into the Capitol, I am asking the Court to compel the government to fully investigate this matter.

**Other Judicial Actions to Compel Discovery of Government Employment Status**

At our September 23, 2024, status hearing, I mentioned to the Court that judges in other January 6 cases had compelled discovery in similar instances of suspected government involvement. The Court then requested that examples be included in this filing.

In the case of *United States v. Darrell Neely*, 21-cr-00642, a woman wearing a pink beret (who had been waving people into the Capitol for an extended period of time), took defendant Neely's hand and escorted him into the building. The defense requested information about the woman from the government, but none was provided. The government then filed the first brief on the matter, Document No. 48, which was a motion in limine asking the Court to preclude the defense from asking questions on cross-examination about whether the woman was a member of law enforcement. The defense responded in Document No. 72, outlining how the woman

wearing the pink beret had influenced Mr. Neely's actions, and arguing that examining whether the woman was working on behalf of the government should be allowed. Judge Bates found in Order No. 80, at pages 6 through 9, that if the woman possessed exculpatory information, it would be subject to Brady, including whether the woman was working for law enforcement. In that order, Judge Bates deferred ruling on the matter until Neely's May 10, 2023, status hearing (that was then continued to May 17, 2023). However, on May 8, 2023, the government filed a complaint against Jennifer Inzunza Vargas Geller (23-mj-00099, Document No. 1), charging the woman in the pink beret with four misdemeanors.[1] I have been told that Judge Bates required the government at Neely's May 17, 2023, status hearing to directly answer whether Vargas Geller was working for 'law enforcement,'[2] and the prosecution denied having knowledge that she was.[3] This demonstrates that other judges in this district have compelled the government to produce information on whether individuals were working for the government when it is material to allegations brought against a defendant, and especially when a suspected government employee directly affected the defendants' entry into the Capitol.[4]

---

[1] Publicly filing this complaint was unusual since the government has never arrested Vargas Geller. According to journalist Steve Baker, Vargas Geller is in Thailand, and the government has not tried to extradite her: https://rumble.com/v2yjxx2-five-in-ten-with-steve-baker-ep.-11-where-is-pinkberet.html

[2] Even if the government denied that Vargas Geller was working for law enforcement, it does not rule out the possibility that Vargas Geller was working on behalf of the government in a capacity other that law enforcement. It also does not rule out the possibility that Vargas Geller may have been working on behalf of law enforcement, but that the prosecutor was not aware of that working relationship due to the compartment nature of government operations. As it relates to my case, it is important for the Court to require the government to thoroughly seek all such information from Hofer's employers and to require Hofer's employers to provide full information in discovery.

[3] I had hoped to provide a transcript to the Court from Neely's May 17, 2023, hearing, unfortunately that hearing has never been fully transcribed, and the Court reporter, Bryan Wayne, has quoted me a production cost of $320, which is more than I can afford. However, my standby counsel, Mrs. Cubbage, was assisting in that case, so I am basing the above account of what transpired at that hearing on Mrs. Cubbage's direct recollection.

[4] In the case of Neely, Vargas Geller took his hand and escorted him into the Capitol. In my case, Nicholas Hofer pushed me into the Capitol. In both instances, any government relationship to the person influencing the movement of the defendant would be relevant.

Another example of a district judge compelling the government to disclose whether individuals were government employees occurred in the case of *United States v. Lavrenz*, 23-cr-00066-ZMF. On March 24, 2024, counsel for Rebecca Lavrenz filed a brief (Document No. 62)[5] requesting an unredacted version of the FBI 302 from an interview of John Guandolo, and the identities of the FBI agents Guandolo was with, and any 302s from interviews of the two agents, and any recordings of the interviews. On March 26, 2024, at the beginning of the Lavrenz trial, Judge Faruqui dealt with the matter. This is reflected in the transcript (Document No. 78 from Lavrenz), which, I am including as Exhibit 1. On Page 10 of the transcript, AUSA Parker attested to the Court that there was no exculpatory or relevant information in the unredacted version of the Guandolo 302. However, counsel for Lavrenz pointed out there was exculpatory information in the unredacted sections of the 302, which would entitle the defense to listen to the audio recordings from which the Guandolo 302 was based (pp. 12-13), and that they believed there would be 302s related to the two FBI agents Guandolo was with (p. 16).

After the issue of the two FBI agents was raised, the government immediately attempted to muddy the water and cast doubt on whether there were FBI agents with Guandolo. AUSA Parker said, "I don't believe my office is aware of any other 302s of any FBI agents that were purportedly there" (p. 17).

---

[5] The Lavrenz filing came after I filed a motion about the same FBI agents (ECF No. 212) on February 12, 2024.

> Case 1:23-cr-00066-ZMF   Document 78   Filed 05/15/24   Page 17 of 261         17
>
> ```
> 1            MR. PARKER:  I have never heard or -- this is an
> 2    issue that's been raised in at least one other case.
> 3            I'm not aware of -- I don't believe my office is
> 4    aware of any other 302s of any FBI agents that were
> 5    purportedly there.  And "purportedly" is an important caveat
> 6    there, because these are -- the allegation that there were
> 7    FBI agents there is something that Mr. Guandolo has made in
> 8    public statements that are mixed in with public statements
> 9    that, you know, have questionable credibility.
> ```

*Figure 1: An excerpt from the March 26, 2024, transcript from the trial of United States v. Lavrenz, which shows that AUSA Parker attempted to cast doubt on the possibility that FBI agents were with Guandolo.*

After the government's attestation about the Guandolo 302 report, Judge Faruqui was primed to take the prosecutors at their word as officers of the Court. However, counsel for Lavrenz pointed out for the record that the prosecutors had only reviewed the Guandolo 302 (which the report stated was not a verbatim account), and that the audio recording might contain additional relevant information that the FBI withheld from the 302 (pp. 21-22).

Judge Faruqui agreed with the defense and compelled the government to listed to the interview recording before revisiting the matter the next morning. On March 27, 2024, the government reported back that after reviewing the recording, they had made two additional disclosures to the defense team for Lavrenz.

```
16            MR. PARKER:  Thankfully there was a court reporter
17      there taking it down diligently.
18            We, yesterday evening, received the audio recording
19      of Mr. Guandolo's FBI interview.  This morning we made two
20      minor additional disclosures to defense based on our review
21      of that recording in the spirit of Your Honor's request
22      that we go beyond our discovery obligations.
23            THE COURT:  Thank you.
```

*Figure 2: An excerpt from the March 27, 2024, transcript from the trial of United States v. Lavrenz, which shows that the government reviewed the audio recording of the Guandolo interview and made two additional disclosures to the defense.*

These two disclosures were not included in the Lavrenz transcript but were sent directly to the Lavrenz defense team and were not as minor as the government made them sound. The first disclosure was that Guandolo had seen agents that he recognized as being members of the FBI Washington Field Office SWAT Team. The second disclosure was that Guandolo had been at the Capitol with an FBI agent who was not on duty and was attending the demonstration with his family.[6] None of that information was documented in the Guandolo 302, and the omission of those facts in the 302 allowed the government to imply to Judge Faruqui in the Lavrenz case, and to the Court in my case (ECF No. 222 at 7), that there was nothing in the Guandolo 302 report about Guandolo being with FBI agents at the Capitol.

These two examples demonstrate the judges in this district have compelled the government to produce additional information related to whether individuals at the Capitol were working for the government. It also shows that the Court must make the government pursue the information, since some key details may not have been reviewed by the front line prosecutors.

---

[6] The government's disclosure of an FBI agent who took personal leave to attend the event with the family seems to match the agent I labeled as Guandolo's Colleague #2 in ECF No. 212. As I will note later in this filing, the other disclosure about Guandolo seeing members of the FBI WFO SWAT Team matches Guandolo's Colleague #1.

**I Am Asking the Court to Make the Government Find Out**

I feel it's necessary to stress to the Court the significance of the compartmented nature of government prosecutions and government operations in general. This reality means that prosecutors assigned to my case might be blind to the existence of exculpatory materials. However, my motion has pointed out that the government knows where Hofer works, and this fact enables the prosecution to FIND OUT if Hofer was working for the government on January 6. It is not sufficient for the government to claim, "we are not aware of any information." I am asking the Court to compel the government to pursue this information to the fullest extent.

My past filings have offered the Court several examples of the prosecution not being aware of information or materials that did ultimately prove to exist. For instance, in ECF No. 139 at 22, I pointed out that publicly available video shows that undercover MPD detective Michael Callahan had been filming at the Capitol, and that the government had not produced any of his recordings. In fact, a report produced by the government in discovery claimed that Detective Callahan did not have a recording device at the Capitol. But months later, the government ultimately admitted that I was right, and produced photos and videos recorded by Callahan on January 6 (See ECF 252 at 16). This shows that just because the prosecution is not initially aware of information, it does not mean the information is not possessed by other government entities.

Another example is the matter of the previously mentioned FBI agents who were with John Guandolo at the Capitol. In ECF No. 212, I provided the Court facts about Guandolo's public statements about meeting multiple FBI agents at the Capitol, Guandolo's sworn admission to an Alaska court that he had been with an FBI agent at the Capitol, and video that clearly shows the men that Guandolo was with. Despite laying that solid factual foundation, the government accused me in ECF No. 222 at 3, of spreading a baseless conspiracy. In a footnote

and the redacted portions of the government's response on page 7, the government also implied that they were not aware of Guandolo being with FBI agents at the Capitol. That Footnote at the included legal jargon about the prosecution not being responsible for information unknown "to those acting in the case on the government's behalf." Essentially, the government's prosecutors claimed that they didn't know whether the men with Guandolo were FBI agents, and they didn't go out of their way to find out.

Yet the government was more than happy to label me a conspiracy theorist (just as they have done in responding to my second motion on the man who pushed me into the Capitol).

As I mentioned earlier, the prosecutors in the Lavrenz trial took a similar position on 'not knowing' whether there were FBI agents with Guandolo. In fact, they went out of their way to stress that Guandolo's colleagues were only 'purportedly' FBI agents. But when the Court compelled the Lavrenz prosecution team to listen to the Guandolo recording, the wall of 'not knowing' was shattered, and the government felt obligated to produce additional Brady information to the defense regarding the FBI agents that Guandolo was with at the Capitol.

This information would not have been hard for the government to obtain. If the prosecution wanted to know it, they could have told the FBI to identify their agents who were with Guandolo. But one government agency was not eager to learn the truth from another government agency, so it required the Court compelling them to dig deeper before additional facts about the FBI agents who were with Guandolo were discovered. As it turns out, one of the agents who was with John Guandolo at the Capitol is Baker Doughty of the FBI's Washington Field Office. In ECF No. 212, I labeled him as Colleague #1.



*Figure 3: FBI Special Agent Baker Doughty of the Washington Field Office appeared in the FBI film 'Chasing the Dragon.'*

I would think that FBI WFO agents who are working on the January 6 cases cross paths with Baker Doughty fairly often at the office, but apparently no one at the FBI wanted to tell the prosecution in this case, or in the Lavrenz case, that Doughty was at the Capitol with Guandolo. Perhaps this is because doing so would have resulted in the prosecution becoming aware of information they would have then been obligated to disclose. Such awareness would then have prevented prosecutors from playing dumb about these FBI agents in Court filings.

As I noted in ECF No. 252 at 31, the DOJ guideline for criminal discovery was established in accordance with Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), 18 U.S.C. § 3500 (the Jencks Act), and Federal Rules of Criminal Procedure 16 and 26.2, and extends production obligations to any agency that has participated in an investigation. Baker Doughty not only worked for an agency (The FBI) that has extensively participated in the January 6 investigations, but Doughty has also personally participated, so the government's discovery obligation extends to Doughty. An FBI 302 report in global discovery

lists Doughty as one of sixteen agents from the Washington Field Office SWAT Team that executed a warrant on January 6 defendant Fi Duong[7] on July 1, 2021, in Alexandria, Virginia. Doughty's role on the FBI SWAT Team explains why CCTV shows him in communication with active duty FBI SWAT at the Capitol on January 6, and fits the government's compelled disclosure in the Lavrenz case of Guandolo telling the FBI that he saw FBI WFO SWAT Team members at the Capitol. Furthermore, Doughty's participation in the Fi Duong arrest demonstrates that the FBI considers Doughty to have been on active duty at the Capitol on January 6, since his entry into the government's alleged restricted area would have otherwise created a conflict of interest that would prevent him from working on January 6 cases.

Now the matter of Guandolo and the FBI agents is a little tangential to the matter of whether Nicholas Hofer was working for the federal government on January 6, but I have included it as an example to stress to the Court how the government has used lack of awareness constituting a lie of omission to deceive the Court, and to emphasize how crucial it is for the Court to issue orders that pin the government down on discovery issues like this.

The importance of pinning down whether Hofer was working on behalf of the government extends to all possibilities. For this reason, my motion includes the possibility that Hofer was a government employee, contractor, or informant. But Hofer would be working on behalf of the government even if he took a day of leave to attend the events of January 6, if he did so with the implied understanding that he was to pursue a government objective while he was at the Capitol. I stress this to the Court, because the government has seemingly tried to label other federal assets at the Capitol as being there at their own personal discretion.

---

[7] Coincidentally, Fi Duong is the same defendant that undercover MPD officers Tomasula and Callahan (an FBI Task Force Officer) introduced to an undercover FBI agent who tried to entrap Duong into making explosive devices.

For instance, in the Day 56 transcript for United States v. Nordean, et al, 21-cr-00175, Document No. 952 at 22, prosecutors asked whether FBI informant James Ehren Knowles testified that he had made FBI agents aware that he was at the Capitol (p. 59), and that his FBI handler did not tell him to leave (p. 67). However, Knowles denied being an "agent of the United States government." But even if Knowles was not designated an "agent," the government's real time implied consent to his presence means Knowles was acting on behalf of the government.

We still don't know the full extent of how many government informants were at the Capitol or what each of them was doing, but in the recent September 25, 2024, Congressional hearing, DOJ Inspector General Horowitz indicated that there were many informants and that details of their activity will be published in an upcoming report.[8] The fact that a multitude of informants were in the January 6 crowd and that their actions warrant OIG review, indicates that these informants were at the Capitol on behalf of the government. Clearly, some agencies within the government already possess information about these informants, but it's possible that the prosecutors in my case have been siloed away from it to prevent them from becoming aware of information would be relevant to my case and subject to the government's *Brady* obligations. This possibility justifies the Court compelling the government to seek information on Hofer.

**I Have Demonstrated that the Information is in the Possession of the Government**

The government agent who attested to Nicholas Hofer's Statement of Facts (See: *United States V. Hofer*, 24-mj-00261, at 3), said he surveilled Hofer at his "place of employment, located in Martin County, Indiana." This demonstrates that the government now possesses information on where Hofer has been employed. Since the government possesses this

---

[8] DOJ Inspector General Horowitz telling Congress on September 25, 2024, that numerous informants were at the Capitol, and that the information will be in a report: https://x.com/julie_kelly2/status/1838975966099497328

information, they know whether Hofer has been employed by the federal government or a federal contractor. If Hofer is employed by the federal government or contractor at Crane, then Hofer almost certainly has a federal security clearance, which would require a federal background investigation. If Hofer completed a federal background investigation, the government also possesses information on what agency or organization Hofer worked for on January 6, and can pursue and obtain information on whether Hofer was at the Capitol on behalf of the government. There is no question that the government possesses this information, the only question is whether the prosecutors in this case have fully investigated and received complete answers to my questions about whether Hofer was working on behalf of the government on January 6.

**I Have Demonstrated Materiality to my Case and the Information Would be Exculpatory**

As I demonstrated in ECF No. 351 at 10, Hofer pushed me into the Capitol, then pushed me again as I quickly turned around attempting to exit the Capitol. If the threshold of that door is the threshold of the government's accusations against me, then Hofer is the one who pushed me over that threshold. His actions are the most material facts in my case. And if Hofer was working on behalf of the government, then the government is prosecuting me for their own conduct.

Furthermore, the only remaining felony against me is Count 1: Civil Disorder. This charge has multiple elements, among which are the requirements that the government prove that I interfered with law enforcement, and that any alleged interference happened while other persons were being violent. It seems that the government's theory in my case is that I interfered with police when my flagpole was caught in the door. The facts do not support the government's allegations; but that incident also would have never occurred had Hofer not pushed me into the Capitol, and had Hofer not interfered with my exit. I should also not be convicted of a felony for Hofer's violence, especially if he were working on behalf of the government.

**I Have Demonstrated a Reasonable Likelihood that Hofer Works for the Government**

In the case of *United States v. Darrell Neely*, 21-cr-00642, the defense demonstrated the materiality of the actions of Vargas Geller (the woman in the pink beret) because she took Neely's hand and escorted him into the Capitol. Neely's defense team also offered a reasonable suspicion that Vargas Geller's cumulative behavior could be that of a government operator, however the defense did not provide any outside evidence tying Vargas Geller to the government. Ultimately, the Court did compel the prosecution to disclose whether they were aware of Vargas Geller being affiliated with Law Enforcement (even though Vargas Geller had been charged), but the prosecution denied having knowledge that she was.

In my case there is also clear materiality since Nicholas Hofer directly pushed me into the Capitol. I laid out Hofer's cumulative suspicious behavior on January 6 in ECF No. 272. But I have also now provided outside evidence that Hofer has previously been employed by the United States military (ECF No. 351 at 5), and that it is highly likely that Hofer has a security clearance and has worked at the top secret federal government facility in Crane, Indiana.[9] This additional context for the now charged Nicholas Hofer far surpasses the context provided by the defense team for Neely about the then charged Jenifer Vargas Geller, yet the Court in that case still deemed Vargas Geller's actions to be material to Neeley, and to be suspicious enough to compel disclosure. If the Neely case was the evidentiary threshold justifying compelled disclosure, then I have surpassed it. The Court should compel disclosure of Hofer's relationship to the government.

---

[9] According to the basic information the government provided in Hofer's Statement of Facts and the corresponding DOJ press release, Hofer commutes at least 80 minutes to his workplace in rural Martin County, Indiana (See: ECF No. 351 at 7). There are almost no jobs worth traveling for in Martin County except for those connected to a top secret military facility at Crane, IN, which houses multiples federal agencies and associated organizations. So, based merely on the percentage of Martin County's jobs that are on the Crane base, there is an extremely high likelihood that Hofer works for the federal government either as a direct employee, or as a federal contractor, and that Hofer held a government security clearance on January 6.

**Summary of Motion to Compel Discovery on the Man who Pushed Me into the Capitol**

During our September 23, 2024, status hearing, the Court saw that the government had the opportunity to deny that Hofer has worked for the government, but instead of directly putting the issue to rest, the government dodged the question. It's clear from the existing facts on Hofer there is a high likelihood that Hofer worked for the federal government as an employee or contractor on January 6. This man pushed me into the Capitol, so there is no information that would be more material or exculpatory to my case than what I am seeking to be disclosed. This information is in the government's possession, and in the interests of justice, the Court should grant my motion and compel the government to vigorously pursue it and to produce it.

Respectfully submitted to the Court,

By: William Pope

/s/

William Pope
Pro Se Officer of the Court
Topeka, Kansas

Certificate of Service
I certify a copy of this was filed electronically for all parties of record on September 27, 2024.
/s/
William Alexander Pope, Pro Se